[Cite as *Dhalow v. Dept. of Rehab. & Corr.*, 2010-Ohio-3749.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

ABDURAHMAN MOHAMED DHALOW

    Plaintiff

    v.

DEPARTMENT OF REHABILITATION AND CORRECTION

    Defendant
    Case No. 2009-05137

Judge Alan C. Travis
Magistrate Matthew C. Rambo

MAGISTRATE DECISION

{¶ 1} Plaintiff brought this action alleging that an employee of defendant assaulted him. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} As an initial matter, on April 23, 2010, defendant filed a motion to quash the subpoena issued to Larry Greene. On April 26, 2010, defendant filed an affidavit from Greene in support of the motion, wherein he states that he received the subpoena on April 26, 2010, one day before trial, but that he was scheduled to attend a mandatory training seminar on the day of trial. Upon review, defendant's motion is GRANTED and the subpoena issued to Larry Greene is hereby quashed.

{¶ 3} At all times relevant, plaintiff was an inmate in the custody and control of defendant at the Southern Ohio Correctional Facility (SOCF) pursuant to R.C. 5120.16. Plaintiff testified that on February 17, 2009, a "commissary day," he was permitted to purchase food items from the SOCF commissary. According to plaintiff, after he purchased several items from the commissary, an inmate in the cell above his lowered

a "line," consisting of a sock tied to the end of a string, so that the two could exchange and share commissary items. Plaintiff admitted that such a line is considered contraband and not permitted under defendant's rules. Plaintiff stated that during the transaction, corrections officer (CO) Philip Markins walked by his cell, saw the line, and "snatched" it before the other inmate had a chance to pull it back. Plaintiff testified that as a result of Markins' actions, he "disrespected" Markins by calling him "every name I could think of." According to plaintiff, Markins returned to the area shortly thereafter and sprayed him with two cans of chemical mace. Plaintiff asserts that Markins' actions were unwarranted and excessive.

{¶ 4} Plaintiff further testified that after the incident Markins wrote a conduct report wherein he alleged that after he passed plaintiff's cell, he heard plaintiff call for "help"; that when he returned to plaintiff's cell, plaintiff attempted to throw a cup of unknown liquid on him; that he sprayed plaintiff with a short burst of mace; that plaintiff again tried to throw the liquid at him; that he administered another short burst of mace; and that plaintiff then dropped the cup. (Plaintiff's Exhibit 2.) The Rules Infraction Board (RIB) subsequently found plaintiff guilty of violating institutional rules by attempting to throw an unknown substance on Markins. However, on appeal, the warden's assistant, Larry Greene, overturned the RIB decision. (Plaintiff's Exhibit 1.) In his written decision, Greene found that the video recording of the incident showed Markins spray plaintiff without provocation; that the video did not show plaintiff attempting to throw liquid on Markins. Greene also states that the RIB withheld the video from plaintiff even though it was used by defendant as evidence against him.

{¶ 5} A review of the video shows the "line" described by plaintiff hanging in front of his cell; a CO picking up the line and walking away from plaintiff's cell; the CO returning to plaintiff's cell less than 10 seconds later; the CO raising his arm and pointing it into plaintiff's cell twice; and the CO leaving the area. From beginning to end the incident lasted approximately 30 seconds. Neither plaintiff nor the interior of his cell

can be observed on the video and the court is unable to precisely determine what occurred.  (Defendant's Exhibit L.)

**{¶ 6}**   Markins testified that after he picked up the line and walked away from plaintiff's cell, he heard plaintiff "holler" for help.  According to Markins, yelling for help is a well-known tactic that inmates use to get COs to come to the front of their cells, but that he nevertheless responded out of concern that plaintiff may have been harming himself.  Markins testified that when he arrived in front of plaintiff's cell, plaintiff was holding a cup containing an unknown liquid and stated "that's my line bitch," "eat this shit bitch."  Markins stated that he then administered "reactive force" and sprayed plaintiff with mace to stop him from throwing the unknown liquid.  According to Markins, plaintiff made a second attempt to throw the liquid and he administered a second burst of mace whereupon plaintiff dropped the cup and Markins left the range.

**{¶ 7}**   Markins further testified that after he left the range, he notified his supervisor of the incident and that plaintiff was subsequently removed from his cell and taken to a segregation cell.  Markins stated that the medical department was notified of the incident and that a member of the medical staff examined plaintiff while he was in segregation.  (Defendant's Exhibit J.)  Markins testified that he then filed both a conduct report and an incident report, and that he also filled out a use-of-force cover sheet. (Plaintiff's Exhibit 2, Defendant's Exhibits D, E.)  According to Markins, a use-of-force committee reviewed the incident and found that he used appropriate force during the incident and that the deputy warden of operations concurred with that finding. (Defendant's Exhibit F.)

**{¶ 8}**   Linnea Mahlman is the Institutional Inspector for SOCF.  Mahlman testified that her duties include reviewing inmate complaints and grievances.  She stated that plaintiff filed a grievance following the incident and that she denied the grievance because the incident was pending before both the RIB and the use-of-force committee. According to Mahlman, the grievance process, the RIB, and the use-of-force committee are separate processes within the institution.  However, she also stated that she

reviewed the video recording and conduct reports and that it was her opinion that Markins acted properly.

{¶ 9}   The Ohio Administrative Code sets forth the circumstances under which force may be lawfully utilized by prison officials and employees in controlling inmates. Ohio Adm.Code 5120-9-01(C) provides, in relevant part:

{¶ 10}  "(2)  Less-than-deadly force.   There are six general circumstances in which a staff member may use force against an inmate or third person.  A staff member may use less-than-deadly force against an inmate in the following circumstances:

{¶ 11}  "(a)  Self-defense from physical attack or threat of physical harm;

{¶ 12}  "(b)  Defense of another from physical attack or threat of physical attack;

{¶ 13}  "(c)  When necessary to control or subdue an inmate who refuses to obey prison rules, regulations or orders;

{¶ 14}  "(d)  When necessary to stop an inmate from destroying property or engaging in a riot or other disturbance;

{¶ 15}  "(e)  Prevention of an escape or apprehension of an escapee; or

{¶ 16}  "(f)  Controlling or subduing an inmate in order to stop or prevent self-inflicted harm."

{¶ 17} The court has recognized that "corrections officers have a privilege to use force upon inmates under certain conditions.  * * *  However, such force must be used in the performance of official duties and cannot exceed the amount of force which is reasonably necessary under the circumstances.  * * *  Obviously 'the use of force is a reality of prison life' and the precise degree of force required to respond to a given situation requires an exercise of discretion by the corrections officer."  *Mason v. Ohio Dept. of Rehab. & Corr.*  (1990), 62 Ohio Misc.2d 96, 101-102.  (Internal citations omitted.)

{¶ 18} Based upon the evidence adduced at trial, the court finds that Markins was more credible than plaintiff.  As a result, the court finds that Markins acted in self

defense when he administered chemical mace against plaintiff and that such force was not excessive.  Accordingly, judgment is recommended in favor of defendant.

*A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i).  If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed.  A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law*

*under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*


_____
MATTHEW C. RAMBO
Magistrate


cc:


Amy S. Brown                                          Abdurahman Mohamed Dhalow, #527-094
Kristin S. Boggs                                       P.O. Box 45699
Assistant Attorneys General                   Lucasville, Ohio 45699
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

MR/cmd
Filed July 22, 2010
To S.C. reporter August 11, 2010